IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:13-CR-3011 |
| vs. | MEMORANDUM AND ORDER |
| TROY CRAMER, | |
| Defendant. | |

This matter is before the Court on the motion to vacate under 28 U.S.C. § 2255 (filing 66) filed by the defendant, Troy Cramer. The motion was timely filed less than 1 year after the Supreme Court initially recognized the right that the defendant's motion asserts. *See*, § 2255(f); *Johnson v. United States,* 135 S. Ct. 2551 (2015).

Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." A § 2255 movant is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show that the movant is entitled to no relief. § 2255(b); *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010). Accordingly, a motion to vacate under § 2255 may be summarily dismissed without a hearing if (1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *see also Sinisterra*, 600 F.3d at 906.

BACKGROUND

The defendant was convicted, pursuant to a guilty plea, of conspiring to distribute 500 or more grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. Filing 36 at 1. In his plea agreement, the defendant "knowingly and expressly" waived "any and all rights to contest" his conviction and sentence, "including any proceedings under 28 U.S.C. § 2255," except for the right to challenge his conviction and sentence "should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to

which the defendant is agreeing to plead guilty fails to state a crime" and the right to "seek post conviction relief based on ineffective assistance of counsel, or prosecutorial misconduct," if the grounds for that claim could not have been known by the defendant at the time of his plea. Filing 25 at 6-7.

The presentence report found that the defendant was a career offender under U.S.S.G. § 4B1.1. Filing 38 at 8. Specifically, the defendant had prior convictions for a controlled substance offense (a previous federal conviction for conspiracy to distribute methamphetamine) and a "crime of violence" as defined by U.S.S.G. § 4B1.2(a) (a Nebraska state conviction for terroristic threats). Filing 38 at 8. Accordingly, the presentence report assessed the defendant's offense level at 37, which (after a reduction for acceptance of responsibility) combined with a criminal history category of VI for a Guidelines imprisonment range of 262 to 327 months' imprisonment. Filing 38 at 8, 17. The Court accepted that Guidelines range, filing 37 at 1, and imposed a within-Guidelines sentence of 262 months' imprisonment, filing 36 at 2.[1]

Shortly after the Court entered its amended judgment, the Supreme Court held in *Johnson* that the definition of "crime of violence" contained in 18 U.S.C. § 924(e)(2)(B) was unconstitutionally vague. 135 S. Ct. at 2563. Based on the presence of the same language in § 4B1.2(a), the defendant filed the instant § 2255 motion. Filing 66.

## DISCUSSION

The defendant's argument is twofold. First, the defendant contends that Nebraska terroristic threats is only a "crime of violence" within the residual clause of § 4B1.2(a)(2)—that is, it is not a "crime of violence" within the meaning of the "elements clause" of § 4B1.2(a)(1), or an offense enumerated in § 4B1.2(a)(2). Second, the defendant contends that the residual clause of § 4B1.2(a)(2) is invalidated by *Johnson*, and that as a result, he is entitled to resentencing.

The Court agrees with the defendant that Nebraska terroristic threats can only be considered a "crime of violence" pursuant to the residual clause of § 4B1.2(a)(2). However, the Court disagrees with the defendant with respect to whether the residual clause is unconstitutionally vague: under binding Eighth Circuit precedent, the vagueness of a Sentencing Guideline is not a violation of a defendant's right to due process. And, the Court finds, the defendant's collateral attack is precluded by the waiver provision of his plea agreement. Accordingly, the Court will deny the defendant's § 2255 motion.

---

[1] The judgment was later amended for reasons unrelated to this memorandum and order.

TERRORISTIC THREATS AS "CRIME OF VIOLENCE"

A "crime of violence," as defined by § 4B1.2(a) at the time of the defendant's sentencing,[2] was a federal or state offense punishable by a term of imprisonment exceeding 1 year, that

(1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

So, § 4B1.2(a) essentially comprised three categories of "crime of violence": the "elements clause" of § 4B1.2(a)(1), the "enumerated offenses" specifically identified in § 4B1.2(a)(2), and the "residual clause" of crimes involving "conduct that presents a serious potential risk of physical injury to another." The language of § 4B1.2(a)(2)'s residual clause was identical to the language of § 924(e)(2)(B) that the Supreme Court struck down in *Johnson*.

So, the initial question is whether terroristic threats, under Nebraska law, is a "crime of violence" under the elements clause of § 4B1.2(a)(1), or whether the defendant's career offender status necessarily rested on the residual clause.[3] The Court finds that the Nebraska crime of terroristic threats does *not* have "as an element the use, attempted use, or threatened use of physical force against the person of another."

"Physical force" has been defined as "'*violent* force—that is, force capable of causing physical pain or injury to another person.'" *United States v. Williams*, 690 F.3d 1056, 1067-68 (8th Cir. 2012) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010) (defining "physical force" under the Armed Career Criminal Act)); *see also United States v. Bartel*, 698 F.3d 658, 661 (8th Cir. 2012) (same test used to decide whether offense constitutes "crime of violence" under Sentencing Guidelines or "violent felony" under Armed Career Criminal Act). It is important to note that even threatening a crime of violence is not itself a crime of violence unless the threat includes a threat to use physical force. Or, stated another way: Any offense that involves the use, attempted use, or threatened use of physical force against the person of another is a crime of violence, but not every crime of violence necessarily

---

[2] The United States Sentencing Commission has since amended § 4B1.2(a) to remove the residual clause. In this memorandum and order, the Court will refer to the version in effect at the time of sentencing.

[3] It is apparent that terroristic threats was not one of the enumerated offenses of § 4B1.2(a)(2) at that time: burglary of a dwelling, arson, extortion, or a crime involving the use of explosives.

requires the use, attempted use, or threatened use of physical force against the person of another. One simple example is that murder can be committed with the use of poison, *e.g.* Neb. Rev. Stat. § 28-303(3), but poison may not require the use of physical force against the victim. *See, United States v. Torres-Miguel, 701 F.3d 165, 168-69 (4th Cir. 2012); United States v. Andino-Ortega, 608 F.3d 305, 311 (5th Cir. 2010); United States v. Rodriguez-Enriquez, 518 F.3d 1191, 1195 (10th Cir. 2008); but see Vargas-Sarmiento v. U.S. Dept. of Justice, 448 F.3d 159, 175 (2d Cir. 2006).* Nor would, for instance, arson, or burglary of a dwelling, necessarily require the use of physical force against the person of another. *See, United States v. Ortiz-Gomez, 562 F.3d 683, 686-87 (5th Cir. 2009); United States v. Gomez-Hernandez, 300 F.3d 974, 979 (8th Cir. 2002).*

In applying the crime-of-violence definition, pursuant to the categorical approach, the Court is initially concerned only with the fact of a prior conviction and the statutory elements of the underlying offense. *United States v. Ossana, 638 F.3d 895, 899 (8th Cir. 2011).* If, however, the underlying statute encompasses multiple different crimes, only some of which qualify as crimes of violence, the Court applies the modified categorical approach and examines a limited class of record materials to determine which actual crime was committed. *Id.* at 899-900. In applying either approach, the Court examines the elements of the underlying state offense to determine if the conviction encompassed the generic definition of one of the specified offenses or *necessarily* involved "the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 900.

The defendant was convicted of violating Neb. Rev. Stat. § 28-311.01, which provides that a person commits terroristic threats if he "threatens to commit any crime of violence: (a) With the intent to terrorize another; (b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or (c) In reckless disregard of the risk of causing such terror or evacuation." It is the first element—the content of the threat itself, not the mental state—that is at issue here. There is, therefore, no meaningful difference between the categorical and "modified categorical" approach in this case.

Under Nebraska law, a "crime of violence" within the meaning of § 28-311.01 is "an act which injures or abuses through the use of physical force and which subjects the actor to punishment by public authority." *State v. Tucker, 764 N.W.2d 137, 147 (Neb. App. Ct. 2009).* That much is consistent with § 4B1.2(a)(2). But offenses such as robbery, murder, sexual assault, and assault with intent to inflict great bodily injury are also crimes of violence within the meaning of § 28-311.01. *Tucker, 764 N.W.2d at 147; see also State v. Willett, 444 N.W.2d 672, 674-75 (Neb. 1989).* The Nebraska Supreme Court

has, in fact, said that "[w]ithout doubt, a threat of murder is a threat to commit a 'crime of violence'" within the meaning of § 28-311.01. *Willett*, 444 N.W.2d at 675. And as noted above, while murder is unquestionably also a crime of violence within the meaning of § 4B1.2(a)(2), it does not categorically require a use, attempted use, or threatened use of physical force. *See, Torres-Miguel,* 701 F.3d at 168-69; *Andino-Ortega,* 608 F.3d at 311; *Rodriguez-Enriquez,* 518 F.3d at 1195.[4] Similarly, under § 28-311.01, "it is possible to threaten to commit a violent crime, such as arson, with the intent to terrorize another person without ever threatening any person." *State v. Smith*, No. A-02-1482, 2003 WL 22769284, at \*5 (Neb. Ct. App. Nov. 25, 2003), *aff'd,* 678 N.W.2d 733 (Neb. 2004).

The Court does not find it plausible that, were the Nebraska courts directly confronted with the question, they would hold that threatening to poison someone could not support a conviction under § 28-311.01: instead, they would conclude that murder by poisoning would be a "crime of violence" within the meaning of that statute. Indeed, poisoning someone would be a "crime of violence" under the Sentencing Guidelines as well. But threatening to poison someone does not necessarily involve a threat to use physical force against the person of another.

Simply put, under the elements of § 28-311.01, a conviction does not necessarily require that the defendant have threatened the use of physical force against the person of another. So, the validity of the residual clause is implicated.

### UNCONSTITUTIONAL VAGUENESS OF SENTENCING GUIDELINES

The Fifth Amendment guarantee of due process of law is violated when the government takes away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. *Johnson,* 135 S. Ct. at 2556. The question, then, is whether this doctrine is applicable to a sentencing guideline, where the defendant has already been put on notice by the statute of conviction of the conduct it punishes, and where it is the Court's discretion instead of the prosecution's that is at issue. The Eighth Circuit has held that "the Sentencing Guidelines are simply not

---

[4] The Court is aware of the Eighth Circuit's decision in *United States v. Forrest*, 611 F.3d 908 (8th Cir. 2010), but finds it to be distinguishable. The Colorado statute at issue in that case required not only a threat intended to terrorize, but a threat that creates a fear "of imminent serious bodily injury." *Id.* at 910-11. The Eighth Circuit held that any threat which created a fear of "imminent serious bodily injury" was necessarily a threat of physical force. *Id.* No comparable language is present in the Nebraska statute, which only requires an intent to "terrorize." *See* § 28-311.01.

susceptible to a vagueness attack." *United States v. Wivell,* 893 F.2d 156, 159 (8th Cir. 1990). The Court of Appeals explained its reasoning at some length:

> The vagueness doctrine holds that a person cannot be held liable for conduct he could not reasonably have been expected to know was a violation of law. It is settled that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or is so indefinite that it encourages arbitrary and erratic arrests and convictions, is void for vagueness. Although these two due process values secured by the vagueness doctrine tend to coalesce, they are analytically distinct. The first—notice—focuses on the state of mind of the citizen in commanding that the rules he must follow be comprehensible. The second—arbitrary enforcement—concerns the behavior of law enforcement officials, and therefore condemns such empowering statutory devices as status crimes or punishment by analogy. These statutes are in a class by themselves. Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution although not chargeable with any particular offense. But both theories supporting the vagueness doctrine presume a law that attempts to proscribe or prescribe conduct.
>
> The Sentencing Guidelines do not define illegal conduct: they are directives to judges for their guidance in sentencing convicted criminals, not to citizens at large. It is well established that, with the exception of capital cases, there is no constitutional right to such directives. Indeed, a defendant's due process rights are unimpaired by the complete absence of sentencing guidelines. . . . [T]he Constitution does not require sentencing guidelines in noncapital cases.
>
> Because there is no constitutional right to sentencing guidelines—or, more generally, to a less discretionary application of sentences than that permitted prior to the Guidelines—the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague. It therefore follows that the Guidelines cannot be unconstitutionally vague as applied to [the defendant] in this case. Even vague guidelines cabin discretion more than no guidelines at all. What a defendant may call arbitrary and capricious, the legislature may call discretionary, and the

> Constitution permits legislatures to lodge a considerable amount
> of discretion with judges in devising sentences.

*Wivell*, 893 F.2d at 159-60 (quotations and citations omitted).

And that reasoning has even more force in the post-*Booker* framework of advisory Guidelines, where the Guidelines are only a starting point, and a sentencing court is free to impose sentences within the statutory limits based on the factors enumerated in 18 U.S.C. § 3553(a). Accordingly, in *United States v. Meirick*, the Eighth Circuit refused to consider a defendant's constitutional challenge to a Guidelines provision because the Guidelines "did not cause [the defendant]'s alleged sentencing injury." 674 F.3d 802, 804 (8th Cir. 2012). The defendant's sentence, the Court of Appeals explained, "was attributable not to the provisions of [the challenged Guideline], but to the district court's unwillingness to exercise its discretion to vary from those advisory provisions." *Id.*

The Court recognizes that the Supreme Court, in *Johnson*, said that the principles of unconstitutional vagueness "apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." 135 S. Ct. at 2557. But that was a single sentence of *Johnson*, and there is a meaningful difference between a statute like § 924(e)(1), which actually *fixed* the statutory sentencing range, and a sentencing guideline that only informs a judge's discretion when sentencing within a range that is already fixed by statute. *See United States v. Taylor*, 803 F.3d 931, 934 (8th Cir. 2015) (Colloton, Judge, dissenting). In other words, *Wivell* is squarely on point on this question, and *Johnson* is not. *See United States v. Ellis*, 815 F.3d 419, 421-22 (8th Cir. 2016). At that point, this Court is not at liberty to disagree with the Court of Appeals. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003). The Court finds that the defendant's vagueness challenge to § 4B1.2(a)(2) is foreclosed by *Wivell*.

## WAIVER OF COLLATERAL ATTACK

Finally, the Court finds that even if the defendant's vagueness attack on a Sentencing Guideline is cognizable, he waived his right to raise that argument on postconviction relief. As discussed above, the defendant's plea agreement contained a waiver of "any and all rights to contest" his conviction and sentence, "including any proceedings under 28 U.S.C. § 2255," absent specific exceptions that are not present here. Filing 25 at 6-7. And the defendant does not contend that his entry into the plea agreement was not knowing and voluntary.

There is no question that a knowing and voluntary waiver of a defendant's right to direct appeal or collateral attack is generally enforceable.

*DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000). Such a waiver is enforceable when the claim raised falls within the scope of the waiver, the defendant knowingly and voluntarily entered into the plea agreement and waiver, and enforcement of the waiver would not result in a miscarriage of justice. *Ackerland v. United States*, 633 F.3d 698, 701 (8th Cir. 2011).

A defendant cannot waive the right to challenge an illegal sentence. *DeRoo*, 223 F.3d at 923. But the "illegal sentence exception" to the general enforceability of a waiver is extremely narrow: any sentence imposed within the statutory range is not subject to collateral attack in the face of a valid waiver. *Ackerland*, 633 F.3d at 702; *see United States v. Andis*, 333 F.3d 886, 891-92 (8th Cir. 2003) (en banc); *see also Sun Bear v. United States*, 644 F.3d 700, 705-06 (8th Cir. 2011). Accordingly, the Eighth Circuit has found that a waiver of appeal or collateral attack is valid with respect to even a constitutional challenge to a sentence, so long as the sentence falls within the statutory range. *See*, *United States v. Schulte*, 436 F.3d 849, 850-51 (8th Cir. 2006); *United States v. Young*, 413 F.3d 727, 729-30 (8th Cir. 2005).

In short, the plain language of the defendant's waiver of collateral attack encompasses the argument he raises now, and nothing in the Eighth Circuit's precedent suggests that the waiver is invalid. So, the defendant's § 2255 motion is precluded by his plea agreement.

## CONCLUSION

The defendant's allegations either entitle him to no relief, or are contradicted by the record. Accordingly, his § 2255 motion will be dismissed without an evidentiary hearing. A movant cannot appeal an adverse ruling on his § 2255 motion unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, the movant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *see also Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012).

In this case, the Court recognizes that while the Court of Appeals has not overruled *Wivell*, the members of that court may not be entirely of one mind on *Wivell*'s continuing vitality. *See Taylor*, 803 F.3d at 933. And while this Court cannot set aside Circuit precedent, the Court of Appeals itself may not be so bound. *See id.* (citing *United States v. Anderson*, 771 F.3d 1064, 1067 (8th Cir. 2014)). So, the Court finds that on at least one point,

reasonable jurists might find the Court's conclusion debatable.[5] The Court will issue a certificate of appealability.

IT IS ORDERED:

1.  The defendant's pro se motion to vacate under 28 U.S.C. § 2255 (filing 66) is denied.

2.  A separate judgment will be entered.

3.  The Court will issue a certificate of appealability in this matter as to (1) whether a Sentencing Guideline may be challenged as unconstitutionally vague; and (2) whether that challenge is precluded by the waiver of collateral attack in the defendant's plea agreement.

4.  The Clerk shall provide a copy of this order to the Eighth Circuit Court of Appeals.

Dated this 19th day of October, 2016.

BY THE COURT:

_John M. Gerrard_

John M. Gerrard
United States District Judge

---

[5] The Court is also aware that at least one other member of this Court has reached a differing conclusion with respect to whether the Nebraska crime of terroristic threats is a "crime of violence" under the "elements clause" of § 924(e)(2)(B)(i). *United States v. Fletcher,* No. 4:12-CR-3075, 2016 WL 30660, at \*2–3 (D. Neb. Jan. 4, 2016). But the government does not need the Court's permission to seek appellate review. *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.